Waterloo Savings Bank, Plaintiff, v. Aetna S. Carpenter et al., Defendants; A. J. Hobson, Cross-Petitioner; F. A. Rummel, Appellant; Ross H. Comly, Appellee.

No. 46286.

JUNE 15, 1943.

W. H. Soper and D. W. Dickinson, both of Eldora, for appellant.

Gareld Leming and A. J. Hobson, both of Hampton, for appellee.

OLIVER, J.— ■ The Waterloo Savings Bank foreclosed a first mortgage upon certain real estate and purchased the property under sheriff's sale, October 17, 1941, for $8,704.55. Ross H. Comly, executor of the estate of C. H. Comly, deceased, which held a second mortgage upon said property, was a party defendant. Said estate assigned said second mortgage to a third party who foreclosed the same by cross-petition in said principal case, purchased the property at the execution sale on November 29, 1941, for $3,079.01, and assigned said (junior) certificate of sale to appellee, Ross H. Comly.

December 3, 1941, appellee paid into the office of the clerk of the district court $8,788.27, and filed in said office his affidavit deposing that he owned the afore-mentioned junior certificate of sale; that said sale was for the sum of $3,079.01; that he, at said time, paid into the office of said clerk $8,788.27 for the redemption of said property from the execution sale of October 17, 1941; and that he was willing to hold the property and credit the defendant debtors with the sum of $11,867.28, which was his lien upon said property, with interest and costs as provided by law. Thereupon the clerk paid said $8,788.27 to the holder of said senior certificate of sale and said certificate was assigned to appellee.

September 16, 1942, the owner of said real estate con-

veyed the same to appellant, F. A. Rummel, by quitclaim deed. September 18, 1942, appellant sought to make redemption by depositing with the clerk $9,264.81, the amount of the senior certificate of sale with accrued interest. September 22, 1942, appellant filed in said office an affidavit in conformity with section 11792, Code of Iowa, 1939, stating in part that appellee's so-called prior redemption was not valid because made within six months after the senior execution sale, and also because the affidavit filed by appellee in making said redemption was fatally defective in that the amount claimed by appellee in his affidavit was more than $11,000, although his lien was for only about $3,000. Therefore, appellant contended the acts of appellee did not constitute a redemption; that appellee was legally merely an assignee of the senior certificate of sale and that appellant could redeem by paying only $9,264.81, the amount then due upon the senior certificate. October 16, 1942, appellant deposited in the clerk's office the further sum of $3,300.83, the amount then due on the junior lien, to be held by the clerk subject to the adjudication of the rights of the contending parties.

In the meantime, appellee had instituted against appellant and other parties in interest an action in equity involving the foregoing matters. Appellee asserts and appellant denies the two actions were consolidated and tried together. Our conclusions, hereinafter noted, render this point of little moment. However, we concur in the statement in the judgment entry that the two causes were consolidated and tried together under stipulation of the parties. The trial court found appellee had made a valid redemption from the senior execution sale and accordingly fixed the amount necessary to redeem to include the junior lien and the senior certificate, with interest.

I. Appellant contends the affidavit, filed by appellee December 3, 1941, does not comply with Code sections 11789 and 11790, in that it does not state the amount of the junior lien and the amount appellee would credit on said junior lien in the event no redemption was made. The affidavit, which we have not set out at length, contains a detailed description of said junior lien, which is in the form of a sheriff's certificate of

sale. The stated amount thereof, $3,079.01, added to the $8,-788.27, set out in the affidavit as paid to the clerk by appellee, totals $11,867.28, which the affidavit states is the amount of appellee's lien upon the property. The affidavit states appellee is willing to hold the property and credit the debtors with said sum, with interest and costs. The language used is fairly susceptible to no interpretation other than that appellee is willing to credit the entire amount of the junior certificate of sale, $3,079.01, with interest. From the information given, the amount necessary for redemption may be ascertained.

We conclude the affidavit substantially conforms to the requirements of said statutes. Our decisions hold this is sufficient. See Guaranty Life Ins. Co. v. Schmidt, 229 Iowa 794, 294 N. W. 893, and cases therein cited.

II. Code section 11774 provides that the debtor may redeem real property at any time within one year from the day of sale, "and for the first six months thereafter such right of redemption is exclusive."

Code section 11776 provides if no redemption is made by the debtor within six months, "thereafter, and at any time within nine months from the day of sale, said redemption may be made by a mortgagee," or lienholder. Appellant contends appellee's redemption was invalid and was a nullity insofar as creating a legal redemption, because made during the first six-months' period, when the debtor's right was exclusive.

In Wilson v. Conklin, 22 Iowa 452, 454, after a premature redemption by a junior lienholder, a subsequent lienholder made a (pretended) redemption by paying the clerk only the amount due on the original sale certificate, contending that when said former redemption was made the prior lienholder "could not then make redemption, for that this was within six months from the date of the sale, during which time the right of redemption is exclusively in the judgment debtor."

The court said the subsequent lienholder could not make the objection: "the defendant and purchaser can alone contest the validity of such premature deposit or payment of the money."

There were no lienholders in the case at bar other than appellee and the holder of the first certificate of sale. Although

the holder of said first certificate of sale was not required to assign it to a lienholder redeeming during the first six months of the redemption period, it voluntarily accepted the redemption and assigned the certificate to appellee. See Quinn v. First National Bank of Logan, 200 Iowa 1384, 1388, 206 N. W. 271, 273.

During the first six months the statute gives the debtor the right to redeem, to the exclusion of lienholders. A premature redemption by a lienholder would not be effective, as against the debtor, during that period. But it would seem, on principle, that a debtor who did not see fit to exercise his exclusive right of redemption during the period when such right was exclusive might be deemed to have waived the same, and that a premature redemption by a lienholder, accepted by the certificate holder, would become effective, as against the debtor, at the expiration of six months after the execution sale.

In Stephens v. Mitchell, 103 Iowa 65, 73, 75, 72 N. W. 434, 436, the certificate was assigned to Stephens a few days after the execution sale. Thereafter, he foreclosed a junior mortgage which had been assigned to him and purchased the property at execution sale thereunder, all within six months from the original execution sale. Shortly before the expiration of the year of redemption, the debtor conveyed the land to other parties, who attempted to redeem from the first sale only. This attempted redemption was held ineffective because it did not include the amount of the junior lien.

The decision states that if the assignment of the junior " 'mortgage did not take immediate statutory effect as a redemption from the prior sale, it would, by operation of law, have that effect at the expiration of the six months following the first sale.' " The court points out that had Stephens purchased the first certificate of sale after the six months and within the nine months, the transaction would have been a redemption, and there would then have been no question but that, to redeem, the debtor or his assigns must do so from both judgments, and states:

"As Stephens purchased the Griggs [first] certificate within the six months, it was not technically a redemption, and

within the six months Lindenau [the debtor] could have redeemed by paying the Griggs judgment. This was not done, and Stephens held both judgments during the period in which he could have acquired both, and been protected. The practical effect is the same as to the judgment debtor.''

The converse of the Stephens case is involved in Jack v. Cold, 114 Iowa 349, 356, 357, 358, 86 N. W. 374, 376, 377. This was one of a series of mortgage-foreclosure cases. Jack was the purchaser at former foreclosure sales, and at the time of said sales held a junior mortgage. In the cited case he sought to foreclose said junior mortgage against some of the land involved in the previous foreclosures, contending he had not held said previous certificates of sale as a redemptioner, and that, therefore, his junior mortgage and the debt secured by it had not been extinguished· in said former proceedings. The court stated that for the first six months there could have been no redemption under his junior mortgage, but held that, though not technically a redemptioner in purchasing at the execution sale, he became such at the end of six months.

Appellant contends the cited cases are not applicable because of subsequent statutory changes in the method of redemption, as noted in Jack v. Cold, supra; Burns v. Hanby, 184 Iowa 727, 169 N. W. 127; Guaranty Life Ins. Co. v. Schmidt, supra, and cases therein cited. It is true that, because of statutory changes first appearing in the Code of 1897, certain acts which formerly constituted a redemption are no longer sufficient. To the extent that Stephens v. Mitchell, supra, and Jack v. Cold, supra, are based upon statutes substantially different from those now in effect, they are no longer authorities. But the provisions of sections 11774 and 11776, Code of Iowa, 1939, heretofore noted, are substantially the same as provisions in all previous Codes. Such statutes without exception have fixed the period of redemption· for the debtor at one year, with the exclusive right to redeem for the first six months, and for lienholders for the three-months' period between six and nine months. Sections 1926, 1927, Code of 1851; 3332, 3333, Revision of 1860; 3102, 3103, Code of 1873; 4045, 4046, Code of 1897. Therefore, Stephens v. Mitchell, supra, and Jack v. Cold,

supra, are applicable upon the proposition here involved. We hold the redemption by appellee, as a lienholder, during the first six months, accepted by the holder of the certificate of sale, became effective against the debtor and his grantee as a redemption at the expiration of said six-months' period.

III. Appellant predicates error upon the allowance of interest accruing after appellant made the deposits in the clerk's office. Apparently, the parties, on December 1, 1942, entered into a stipulation under which appellee was permitted to withdraw the $9,264.81 deposited by appellant September 18, 1942. This represented the $8,704.55, the original amount of the first certificate of sale, plus interest. Consequently, the trial court on this item allowed interest on $8,704.55 from September 18, 1942, to December 1, 1942, only.

The original amount of the junior certificate of sale was $3,079.01. With interest to October 16, 1942, this totaled $3,-300.83, the sum that day deposited by appellant. The order of court required the payment of interest on $3,079.01 from October 16, 1942, interest to that date having been included in the deposit.

Appellant states the deposits are a tender. Appellant's first deposit, $9,264.81, was about $3,300 less than the liquidated amount then due to appellee. Therefore, it was not a sufficient tender which would deprive appellee of his right to interest thereafter. Community Savings Bk. v. Western Surety Co., 232 Iowa 1381, 8 N. W. 2d 427. Appellant's subsequent deposit of $3,300.83 was not a tender. It was a deposit to be paid the successful party at the end of the litigation. Appellee was willing to accept the amount of both deposits. The amount actually tendered by appellant, $9,264.81, was not sufficient. During the time consumed in the contest in district court and the additional time in his appeal to this court, appellant has, of course, had the use of the property. Appellant was legally in the wrong. Appellee should not be penalized by the loss of the use of the money, to which he was entitled, resulting from appellant's effort to avoid payment in part. The order requiring the payment of interest thereafter accruing was correct. As bearing upon this proposition, though not directly in point, see, Beal v. Iowa State Highway Comm., 209

Iowa 1308, 230 N. W. 302; Welton v. Iowa State Highway Comm., 211 Iowa 625, 639, 233 N. W. 876, 884; annotation 96 A. L. R. 159 et seq.; id. 202 et seq.

Another complaint is that the court should have fixed the rate of interest subsequently accruing at five per cent. Code section 11784 requires the titleholder to pay interest at contract rate in making redemption. The interest rate upon the liens was seven per cent and eight per cent, but the trial court concluded Code section 9405 was applicable and fixed the rate of each at seven per cent. Appellee does not complain of this reduction, and we need not pass upon it. Appellant's contention that the rate should have been fixed at five per cent is not well founded.

Appellant's motion to strike parts of appellee's amendment to the abstract of record and parts of appellee's brief and argument is overruled.—Affirmed:

All JUSTICES concur.